**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIK WIKLUND,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SOLITON, INC., BRAD HAUSER, CHRISTOPHER CAPELLI, WALTER KLEMP, JONATHAN FOSTER, DANIKA HARRISON, NIQUETTE HUNT, and MICHAEL KAMINER,<br><br>　　　　　　　　Defendants. | Case No. _____<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Erik Wiklund ("Plaintiff"), by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.　　This is an action brought by Plaintiff against Soliton, Inc. ("Soliton" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Soliton, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition (the "Proposed Transaction") of Soliton by Allergan Aesthetics, an AbbVie company ("Parent"). Specifically, Soliton will be acquired by Parent through its wholly owned subsidiary, Scout Merger Sub, Inc. ("Merger Sub," collectively Parent and Merger Sub are referred to as

"Abbvie").

2.      On May 8, 2021, Soliton's Board caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with AbbVie.  Pursuant to the terms of the Merger Agreement, Soliton's stockholders will receive $22.60 in cash for each share of Soliton common stock they own (the "Merger Consideration"), in an all-cash transaction valued at approximately $550 million.

3.      On June 15, 2021, in order to convince Soliton public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Defendants have scheduled the special meeting of shareholder to vote on the Proposed Transaction for July 20, 2021.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) Soliton's financial projections; and (ii) the financial analyses conducted by the financial advisors of the Company, Guggenheim Securities ("Guggenheim") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

5.      It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the shareholder vote so Soliton's shareholders can properly exercise their corporate voting rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Soliton's public common shareholders sufficiently in advance of the upcoming shareholder vote or, in the event the Proposed Transaction is

consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Soliton's common stock trades on the Nasdaq Stock Market ("NASDAQ"), which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Moreover, Soliton's proxy solicitor, Saratoga Proxy Consulting, LLC, financial advisor, Guggenheim, and legal advisor, Skadden, Arps, Slate, Meagher & Flom LLP, are all headquartered in this District.

## PARTIES

10.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Soliton common stock.

11.     Defendant Soliton is a public company incorporated under the laws of Delaware with principal executive offices located at 5304 Ashbrook Drive, Houston, Texas 77081. Soliton's common stock is traded on NASDAQ under the symbol "SOLY."

12.     Individual Defendant Brad Hauser ("Hauser") has been a Director of the Company at all relevant times. Hauser also serves as the Company's President and Chief Executive Officer ("CEO").

13.     Individual Defendant Christopher Capelli ("Capelli") has been a director of the Company at all relevant times. Capelli also serves as the Company's Vice Chairman of the Board and Chief Science Officer.

14.     Individual Defendant Walter Klemp ("Klemp") has been a director of the Company at all relevant times.  Klemp also serves as the Company's Executive Chairman of the Board.

15.     Individual Defendant Jonathan Foster ("Foster") has been a director of the Company at all relevant times.

16.     Individual Defendant Danika Harrison ("Harrison") has been a director of the Company at all relevant times.

17.     Individual Defendant Niquette Hunt ("Hunt") has been a director of the Company at all relevant times.

18.     Individual Defendant Michael Kaminer ("Kaminer") has been a director of the Company at all relevant times.

19.     The defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Soliton, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**I.     Background of the Company and the Proposed Transaction**

20.     Soliton is a medical device company with a novel and proprietary platform technology licensed from The University of Texas on behalf of MD Anderson Cancer Center. Soliton's first FDA cleared commercial product, the Rapid Acoustic Pulse ("RAP") device, will use rapid pulses of acoustic shockwaves as an accessory to lasers for the removal of unwanted tattoos and the treatment of cellulite. The Company believes this "Soliton" method has the potential to lower tattoo removal costs for patients, while increasing profitability to practitioners, compared to current laser removal methods. Soliton is investigating potential additional capabilities of the RAP technology. The device is currently cleared in the United States only for use in tattoo removal and cellulite.

21.     On May 8, 2021, Soliton's Board caused the Company to enter into the Merger Agreement with AbbVie.  Under the Merger Agreement, AbbVie, upon the terms and subject to the conditions set forth in the Merger Agreement, will acquire Soliton for approximately $550 ,million in cash. Specifically, Soliton's stockholders will receive $22.60 in cash for each share of Soliton common stock they own.

22.     Concurrently with the execution Merger Agreement, Remeditex Ventures LLC ("Remeditex"), Soliton's largest shareholder, holding approximately 44.6% of the outstanding shares of Soliton common stock, along with Individual Defendants Klemp and Capelli, entered into a support agreements with AbbVie, pursuant to which, Remeditex, Klemp and Capelli has agreed to vote all of their shares of Soliton common stock in favor of the Proposed Transaction.

23.     On May 10, 2021, Defendants and AbbVie issued a joint press release announcing the Proposed Transaction, which stated in relevant part:

**Allergan Aesthetics to Acquire Soliton, Expanding Body Contouring
Portfolio**

**— Acquisition adds Rapid Acoustic Pulse technology platform for improvement in appearance of cellulite in the buttocks and thighs —**

IRVINE, Calif. and HOUSTON, May 10, 2021 – Allergan Aesthetics, an AbbVie company (NYSE: ABBV) and Soliton (NASDAQ: SOLY) today announced a definitive agreement under which Allergan Aesthetics will acquire Soliton and RESONICTM, its Rapid Acoustic Pulse device which recently received U.S. Food and Drug Administration (FDA) 510(k) clearance and is a non-invasive treatment for the short-term improvement in the appearance of cellulite. The acquisition of Soliton expands and complements Allergan Aesthetics' Body Contouring treatment portfolio which includes CoolSculpting® Elite.

The novel platform technology uses non-invasive rapid, high-frequency sound waves to disrupt targeted cellular structures and connective tissue, physically impacting the fibrous septae beneath the skin that contribute to the dimpled appearance of cellulite. In clinical trial data submitted to the FDA, after a single treatment session RESONICTM demonstrated significant improvement and strong patient satisfaction with 92.9 percent of subjects agreeing or strongly agreeing their cellulite appeared improved.

"There is a huge unmet need to address cellulite and effective treatments have been elusive and frustrating for consumers," said Carrie Strom, President, Global Allergan Aesthetics and Senior Vice President, AbbVie. "Soliton's technology offers a new, completely non-invasive approach with clinically-proven results to reduce the appearance of cellulite with no patient downtime. The addition of this technology complements Allergan Aesthetics' portfolio of body contouring treatments. Health care providers will now have another option to address consumers' aesthetic concerns."

"Allergan Aesthetics' brand recognition, global footprint, track record and commitment to developing best-in-class aesthetic treatments makes the Company ideally suited to maximize the commercial potential of the RESONICTM rapid acoustic pulse technology," said Walter Klemp, Executive Chairman, Soliton. "I am proud of the passion and accomplishments of the Soliton team and thankful for the ongoing support of our investors which have culminated in this transaction. We look forward to working with Allergan Aesthetics to ensure a successful completion of this transaction."

Under the terms of the transaction, Allergan Aesthetics will pay $22.60 per share in cash for each outstanding share of Soliton. Soliton's enterprise value for the transaction is approximately $550 million and was approved by the Boards of Directors of both companies. The transaction is subject to customary closing conditions, including clearance by the U.S. antitrust authorities under the Hart-Scott-Rodino Act and approval of

Soliton's shareholders. Guggenheim Securities served as financial advisor to Soliton and Hogan Lovells served as legal counsel to Soliton.

RESONICTM has also received FDA 510(k) clearance for use in conjunction with laser for tattoo removal and has demonstrated clinical results in fibrotic scars.

## II.    The Proxy Omits Material Information

24.    On June 15, 2021, Defendants filed a materially incomplete and misleading Proxy with the SEC.  Defendants have scheduled the special meeting of shareholder to vote on the Proposed Transaction for July 20, 2021.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

### A.    Materially Misleading Statements and Omissions Regarding Soliton's Financial Projections

25.    The Proxy fails to provide material information concerning financial projections by Soliton management and relied upon by the Board in recommending the Proposed Transaction and Guggenheim in performing its financial analysis to issue its fairness opinion. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy states that in connection with the Board's approval of the Proposed Transaction and Guggenheim rendering of its fairness opinion, Soliton's management prepared non-public financial projections for three illustrative scenarios – the "Base Case Scenario," the "Moderate Growth Scenario" and the "Outperform Scenario" – containing certain unaudited prospective financial information regarding Soliton's operations for the fiscal years ending December 31, 2021 through December 31, 2026 (collectively, the "Soliton Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company.

7

Accordingly, the Proxy should have, but fails to provide, certain information in the projections that Soliton management provided to the Board and the financial advisors.  Proxy pages 54-56.

26.     With respect to the Base Case Scenario of the Soliton Projections, the Proxy provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA, and Unlevered Free Cash Flow. The Proxy, however, fails to provide: (i) the line items underlying Soliton's Unlevered Free Cash Flow; (ii) the line items used to calculate Soliton's EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

27.     Likewise, with respect to the Moderate Growth Scenario of the Soliton Projections, the Proxy provides values for non-GAAP financial metrics: EBITDA, and Unlevered Free Cash Flow. The Proxy, however, fails to provide: (i) the line items underlying Soliton's Unlevered Free Cash Flow; (ii) the line items used to calculate Soliton's EBITDA; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

28.     With respect to the Outperform Scenario of the Soliton Projections, the Proxy provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA, Unlevered Free Cash Flow and Probability of Success Adjusted Unlevered Free Cash Flow. The Proxy, however, fails to provide: (i) the line items underlying Soliton's Unlevered Free Cash Flow; (ii) the line items used to calculate Soliton's EBITDA; (iii) the line items underlying Soliton's Probability of Success Adjusted Unlevered Free Cash Flow; and (iv) a reconciliation of all non-GAAP to GAAP metrics.

29.     The omission of this information renders the projections disclosed by Defendants a mis-leading half-truth and thereby a direct violation of Regulation G and consequently Section 14(a).

30.     When a company discloses non-GAAP financial measures in a Proxy that were relied on by a board of directors to recommend that stockholders exercise their corporate voting

rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation, whether by a schedule or other understandable method, of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31.     In the present case, Defendants' failure to disclose the line items used to calculate EBITDA, Unlevered Free Cash Flow and Probability of Success Adjusted Unlevered Free Cash Flow, or to provide the requisite reconciliation of all non-GAAP to GAAP metrics similarly renders the Proxy materially misleading.

32.     Investors are concerned, perhaps above all else, with the projections and cash flows of the companies in which they invest.  Under sound corporate finance theory, the market value of a company should be premised on the expected unlevered free cash flows of the corporation  Accordingly, the question that the Company's shareholders need to answer in determining whether to vote in favor of the Proposed Transaction is clear:  Is the Merger Consideration fair compensation given Soliton's projected cash flows?  Without the line items underlying Soliton's unlevered free cash flows the Company's shareholders will not be able to properly assess this critical question and evaluate the fairness of the Merger Consideration.

33.     For this reason, Courts have recognized that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

34.     If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability

for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1124-1125 (8th Cir. 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the projections relied upon by Guggenheim, but have omitted crucial line items and reconciliations. Thus, Defendants' omission renders the projections disclosed on page 48 of the Proxy misleading.

   B.   Materially Incomplete and Misleading Disclosures Concerning Guggenheim' Financial Analyses

35.   With respect to Guggenheim's *Discounted Cash Flow Analysis* for Soliton, the Proxy also fails to disclose: (i) the unlevered free cash flows underlying the analysis; (ii) the projected terminal values for the Company; (iii) the inputs and assumptions underlying the range of discount rates ranging from 11.55% – 14.30%; (iv) Soliton's weighted average cost of capital; and (v) the inputs and assumptions underlying the perpetual growth rate range of 2.0% to 3.0%.  Proxy pages 48-49.

36.   These key inputs are material to Soliton shareholders, and their omission renders the summary of Guggenheim' *Discounted Cash Flow Analysis* incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of

> *dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars*....This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, Soliton's shareholders cannot evaluate for themselves the reliability of Guggenheim's *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of the Company or was the result of an unreasonable judgment by Guggenheim, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

37.     With respect to Guggenheim's *Discounted Future Value Analysis Based on Selected Publicly Traded Companies Analysis* the Proxy fails to disclose: (i) the inputs and assumptions used to determine the utilized reference range of trading enterprise value / CY2021E revenue multiple for purposes of 7.0x to 10.0x; and (ii) the inputs and assumptions used to determine the utilized cost of equity range of 12.0% to 14.0%.  Proxy page 49.

38.     With respect to Guggenheim's *Selected Publicly Traded Companies Analysis*, the Proxy fails to disclose: (i) the individual multiples and metrics for the companies observed by Guggenheim in the analysis; and (ii) the inputs and assumptions used to determine the selection of a trading enterprise value / revenue multiple range of 6.5x to 8.5x based on CY2022E for purposesof evaluating Soliton on a stand-alone public market trading basis  Proxy page 50.

39.     With respect to Guggenheim's *Selected Precedent Merger and Acquisition Transactions Analysis* the Proxy fails to disclose: (i) the dates on which each of the selected transactions observed closed; (ii) the inputs and assumptions used to determine the selection of

transaction enterprise value /NTM revenue multiple range of 7.0x to 10.0x for the transactions observed; and (iii) the inputs and assumptions used to determine the selection transaction enterprise value / 2022E revenue multiple range of 7.0x to 10.0x for the transactions observed.  Proxy pages 50-51.

40.     With respect to Guggenheim's *Premia/(Discounts) Paid in Selected Precedent Merger and Acquisition Transactions* analysis, the Proxy fails to disclose: (i) the dates of the closing of each transaction observed in the analysis; (ii) the acquired companies' closing share price on the last trading day prior to announcement of the observed transactions; and (iii) the basis for selecting the representative range of premia.  Proxy pages 51-52.

41.     With respect to Guggenheim's *Wall Street Equity Research Analyst Stock Price Targets* analysis, the Proxy fails to disclose: (i) the identity of the analysts observed; and (ii) the price targets utilized.  Proxy page 52.

42.     With respect to Guggenheim's *Illustrative Theoretical Future Stock Price* analysis, the Proxy failed to disclose: (i) the inputs and assumptions used to determine the selection of NTM revenue multiple range of 7.0x to 10.0x; and (ii) the inputs and assumption used to determine the selection of a discount rate of 13.0%.  Proxy pages 52-53.

43.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming shareholder vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CAUSES OF ACTION

### COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

44.  Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.  Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

46.  Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

47.  The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

48.  Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for Soliton; and (ii) the valuation analyses performed by Guggenheim in support of its fairness opinion.

49.      In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

50.      The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Guggenheim reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Guggenheim, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Guggenheim' analyses in connection with their receipt of the fairness opinions, question Guggenheim as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51.      The Individual Defendants were, at the very least, negligent in preparing and

reviewing the Proxy. The preparation of a Proxy by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

52.     Soliton is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

53.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

54.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.     The Individual Defendants acted as controlling persons of Soliton within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Soliton, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination

of the various statements that Plaintiff contends are materially incomplete and misleading.

56.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

58.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 18, 2021                                **MONTEVERDE & ASSOCIATES PC**

By:  _/s/ Juan E. Monteverde_
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*